Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 4174 - 97C4314 1313 | DATE | 10/21/2004 |
| CASE TITLE | Balamut, et al. Vs. Abraham, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER. Abraham's motions for summary judgment as to the claims of Balamut, Paliulionis, Kasprowicz, Thompson, Henke and Kelly are granted. All other pending motions are denied as moot. |

✓ Docketing to mail notices.
✓ Mail AO 450 form.
Copy to judge/magistrate judge.

JD6  courtroom deputy's initials

OCT 25 2004

2004 OCT 21 PM 2:45
U.S. DISTRICT COURT
CLERK

Date/time received in central Clerk's Office

37

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS J. BALAMUT, JURGIS )
PALIULIONIS, JOHN D. KASPROWICZ, )
BARBARA J. THOMPSON, CAROLYN R. )
HENKE, JUDITH KELLY, and BERNARD )
J. MLYNCZAK, )
)
               Plaintiffs, )
) No. 97 C 4174
        v. ) & 97 C 4313
) Consolidated
SPENCER ABRAHAM, Secretary, )
United States Department of ) Judge George M. Marovich
Energy, )
               Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas J. Balamut ("Balamut"), Jurgis Paliulionis ("Paliulionis"), John D. Kasprowicz ("Kasprowicz"), Barbara J. Thompson ("Thompson"), Carolyn R. Henke ("Henke"), Judith Kelly ("Kelly")(collectively "Plaintiffs") and Bernard J. Mlynczak ("Mlynczak") filed this action[1] against Defendant Spencer Abraham[2] ("Abraham"), Secretary, United States Department of

---

[1] Initially, there were two separate actions that have since been consolidated. The consolidated actions are now referred to collectively. Abraham has also filed a summary judgment motion regarding Mlynczak's claims and Mlynczak has filed a partial cross-motion for summary judgment. These cross-motions will addressed by this Court in a separate decision.

[2] This action was originally filed against then Secretary of the Department of Energy, Fredrico F. Pena. Spencer Abraham, the current secretary of the Department of Energy, has been automatically substituted as the defendant in this matter. Federal Rule of Civil Procedure 25(d).

1



Energy ("DOE"). Plaintiffs' Complaint alleged, <u>inter alia</u>, that Abraham discriminated against them because of their sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991 and that Abraham retaliated against them in violation of Title VII. Abraham now moves for summary judgment. For the reasons set forth below, Abraham's motions for summary judgment as to the claims brought by Balamut, Paliulionis, Kasprowicz, Thompson, Henke and Kelly are granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. Balamut, Paliulionis, and Kasprowicz, Caucasian men, are all general engineers (GS-13) at the Department of Energy ("DOE") Chicago Office (the "Chicago Office"). In November of 1994, there was an opening for a GS-14 environmental scientist/researcher position. No internal announcement for the position ever appeared on the internal job posting bulletin board. Plaintiffs contend that Elizabeth Lyon ("Lyon"), Caucasian personnel specialist failed to post the position. Such postings were customary at the Chicago Office, but not required.

The position was advertised publicly. The public position announcement provided candidates a nine-day window in which to apply. Six candidates from outside the company applied for the position. Eva Pavia ("Pavia"), a Hispanic woman, was hired. A

large part of the environmental scientist/engineer duties involve waste management. Pavia had a Bachelor of Science degree in health physics and had experience with nuclear and hazardous waste management. Balamut, Paliulionis, and Kasprowicz lacked either an undergraduate degree or Pavia's level of experience in radioactive or hazardous waste management. Balamut, Paliulionis and Kasprowicz's contend that Pavia was pre-selected for the position by Anibal Taboas ("Taboas") and that the job description was crafted to fit her experience based on the fact that Taboas made several recruiting trips to Puerto Rico and that six months prior to her being hired, Pavia and some of her colleagues had a twenty minute meeting with Taboas in which they marketed their company's services to Taboas.

Barbara Thompson is a project management assistant at the Chicago Office. Prior to July 1994, Thompson was a lead secretary working for Taboas. In May 1994, Lynn Fraser, another secretary, wrote a letter to Taboas claiming that Thompson was a racist and that she was the reason Fraser was leaving her job at the DOE.

When Taboas informed Thompson that she would be removed from her lead secretary position, he mentioned this letter. At that time he also told Thompson that he had lost trust in her since she had been talking to Taboas's ex-wife. Thompson denies any such communication. Specifically, Thompson states that she only

spoke with Taboas's ex-wife when answering and transferring his phone calls. Thompson was replaced by Patricia Allison ("Allison"), a white woman older than Thompson.

Thompson then spent a month as a secretary before being promoted to lead secretary for two weeks and then being placed in her current project management assistant position. Thompson has not lost any salary, nor has she lost any opportunity for promotion. Nevertheless, on July 19, 1995, Thompson filed an EEO complaint alleging that her removal from the lead secretary position was retaliatory.

Henke is a secretary at the Chicago Office. Henke was a friend of Thompson and she questioned Taboas about Thompson's removal from lead secretary. Other secretaries were promoted before Henke herself was promoted in March 1996. One, Pamela Miller, came to the DOE from the Department of Defense in September of 1994. Her position at the DOE was lower than her previous position at the Department of Defense. Debra Terry was another secretary promoted before Henke. She received her promotion in December of 1994. Taboas thought, based on her work experience and quality of her work product, that she was the most worthy of the first promotion. Finally, Allison was promoted in the summer of 1994 to assume Thompson's lead secretary position. She was subsequently promoted again in the summer of 1995.

4

In February of 1995, Frank Gorup ("Gorup"), Henke's team leader, drafted a memo and position description for Henke's promotion. On March 8, 1995, before her promotion took effect, a promotion freeze occurred. In July 1995, Henke filed an EEO claim regarding the DOE's failure to promote her. In March 1996, during the freeze, Cherri Langenfeld ("Langenfeld"), a manager, gave Henke the promotion despite the freeze.

Kelly is a patent clerk and former secretary at DOE. In 1989, during a work retreat Taboas held one-on-one discussions with the employees to discuss other employees in the group. Kelly refused to participate and Taboas allegedly told her to find another job. In 1995, when the other plaintiffs filed their EEO complaints, Kelly also filed an EEO complaint regarding the 1989 incident. The complaint was dismissed as she had missed the filing window by six years.

In the wake of filing her EEO complaints, Kelly claims she was treated unfairly. Her supervisor, Garlynda Thomason ("Thomason") brought her in for a number of meetings and gave her a hard time for participating in the mediation of her EEO complaint. Her desk was moved into a high-traffic area and she did not receive bonuses received by other employees. However, she also concedes that she failed to receive bonuses prior to ever filing an EEO complaint. And, the evidence reveals that no employees in her division at her level were given promotions

5

during her time there. She also claims that others were allowed to come and go as they please and she was not. Furthermore, Kelly claims that Cornell Williams ("Williams") another of her supervisors, failed to answer her questions or her email. And, that he would constantly monitor stare at her. Kelly claims that her problems with Williams did not develop until Thomason came to the division. Kelly concedes that Williams treated all of the employees as poorly as she claims he treated Kelly.

One of Thomason's superiors, Larry Vann, CEO of the Chicago Office apparently did not get along well with Thomason either. Kelly witnessed several confrontations between the two. But, Kelly felt that Vann was unable control Thomason or get her to change her behavior.

In August of 1995, Plaintiffs sent a letter to Richard Gallegos ("Gallegos"), Director of the Office of Civil Rights and Equal Employment Opportunity, informing him of their fear of violent retaliation from Taboas for their filing of EEO claims ("Gallegos letter"). Gallegos sent the letter to Langenfeld. She forwarded it to Taboas. She now explains that she did so to ensure that Taboas was careful in his dealings with the authors of the letter. Plaintiffs filed an EEO retaliation claim for the Langenfeld's handling of the Gallegos letter.

In December of 1995, a petition supporting Taboas was circulated around the DOE's Chicago Office. The letter may have

been accompanied by the Gallegos letter and a letter Langenfeld wrote to FBI Director Louis Freeh regarding Taboas's security clearance. During the time that the petition was being circulated, a mediation was being conducted between Franklin Peters ("Peters"), the DOE representatives, and the plaintiffs to resolve their complaints regarding the Gallegos letter. At that time, the petition, addressed to Peters, was presented to him. Upon learning of the petition, plaintiffs refused to participate in the mediation. Peters was at all times willing to continue with the mediation.

## DISCUSSION

### I. Standards for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only genuine disputes over "material facts" can prevent a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To overcome a defendant's motion, the plaintiff cannot rest on the pleadings but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue of fact. See Fed. R. Civ. P. 56(e). While the

record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion," Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995), the non-movant must show more than "some metaphysical doubt" regarding the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

II. Discrimination Claims

Balamut, Paliulionis and Kasprowicz assert that Abraham discriminated against them due to their sex in violation of Title VII by hiring Eva Pavia without first giving them the opportunity to apply for the promotion.[3] Under Title VII, it is unlawful for an employer to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment. See 42 U.S.C. § 2000e2(a)(1). There are two methods of proof for demonstrating alleged discrimination: (1) direct proof of discriminatory intent; or (2) indirect proof, or the burden-shifting method described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Oates v. Discovery Zone 116 F.3d 1161, 1169-70 (7th Cir. 1997). Here, Balamut, Paliulionis and Kasprowicz attempt to state claims for discrimination under both methods.

---

[3] Although Thompson, Kelly and Henke also initially brought discrimination claims, they have explicitly abandoned those claims in their respective response briefs.

A.  *Direct Proof*

The Seventh Circuit described direct evidence as "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Direct evidence "in and of itself suggests that the person or persons with the power to hire, fire, promote, and demote the plaintiff were animated by an illegal employment criterion." Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997). Establishing direct evidence of discriminatory intent "essentially requires an admission by the decision maker that his actions were based on a prohibited animus." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Furthermore, the evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." Randle v. LaSalle Telecomms., Inc., 876 F.2d 563, 569 (7th Cir. 1989).

Balamut, Paliulionis and Kasprowicz describe three categories of direct evidence to support their claim that the hiring of Pavia and the failure to allow them to apply for the promotion was discriminatory on the basis of sex. They argue that the Department of Energy's "obsession with affirmative action", in conjunction with Taboas's hiring and promotion record, his admissions and his "manipulation of the employment

9

process," constitutes direct evidence to sustain their sex discrimination claims.

The Court finds this evidence insufficient to defeat summary judgment. Neither the DOE's "obsession with affirmative action" nor Taboas's hiring and firing record from 1989 through 1993 (that provided by the Plaintiffs) provides direct evidence of discrimination in the case of Pavia's hiring in 1994. Any light this evidence sheds on the hiring of Pavia would have to be gleaned through inference or presumption. Any such inference or presumption would be impermissible in employing direct evidence to prove discrimination.

Plaintiffs also point to what they characterize as admissions on the part of Taboas. Plaintiffs assert that Toboas stated that he did not like white people. However, neither this comment, nor any of the comments to which the Plaintiffs object, were contemporaneous with or tied in any way to the hiring of Pavia. Geier v. Madtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996)("isolated comments must be contemporaneous with the [employment decision] or causally related to the . . . decision making process). Furthermore, none of the other comments pointed to by the Plaintiffs are facial evidence of racial animus. Those comments included: that he aimed at achieving diversity within a list of qualified individuals; that he was unaware of the measures of affirmative action and diversity goals within the

DOE; and that given a hypothetical pool of ten promotions, promoting 9 women or minorities would be "close to exemplary work on Affirmative Action." Paliulionis Resp. Br. at 5.

Finally, Plaintiffs argue that the manipulation of the hiring process for which Pavia was ultimately selected constitutes direct evidence of discrimination. They complain that the job opening was advertised outside of the company, the application period was unusually short, the vacancy announcement was not posted internally, and that Taboas rather than Richard Baker ("Baker"), and the direct supervisor of the position, did the hiring. However, none of these variances in the hiring process constitute direct evidence of discrimination. Advertising the position outside the company made the position available to the entire public without regard to gender or race. The time period for application was short for everyone, again without regard to gender or race. The effect of failing to do an internal job posting also affected all employees the same. Finally, having someone other than the direct supervisor do the hiring is not evidence of discrimination. Furthermore, Lyon made the position advertising decisions, not Taboas and Taboas did the hiring rather than the direct supervisor because the direct supervisor was on a month-long vacation.

11

Thus there is not enough direct evidence of discrimination to support Balamut, Paliulionis and Kasprowicz's sex discrimination claims.

B. <u>Burden-Shifting Analysis</u>

Having failed to find direct evidence to support Balamut, Paliulionis and Kasprowicz's discrimination claims, the Court turns to their arguments regarding indirect evidence. The mechanics of proving discrimination pursuant to this indirect burden-shifting analysis are well-settled:

> If the plaintiff establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer a legitimate, nondiscriminatory or non-retaliatory reason for the adverse employment action. If the employer gives a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove this reason is a mere pretext for discrimination.

Payne v. Milwaukee County, 146 F.3d 430, 433 (7th Cir. 1998). To state a prima facie case, Plaintiffs must prove that: (1) they were members of a protected class; (2) they were performing according to their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) another similarly situated employee who was not in their protected class was

treated more favorably. See e.g. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343 (7th Cir. 1997).

Nevertheless, this Court need not resolve whether Balamut, Paliulionis and Kasprowicz have properly made out a prima facie case of discrimination where it can decide the case on other issues. Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 399 (7th Cir. 1997); EEOC v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 149 (7th Cir. 1996)("[T]his court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case"). When evaluating an employer's proffered reasons for pretext, a court need only determine whether the defendant actually believed its reasons, even if the reasons are baseless or trivial. Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997). Plaintiffs cannot establish pretext merely by proving that an employer's skill assessment is flawed. Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001). Rather, plaintiffs must prove that the employer's explanation is a lie. Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001).

Plaintiffs produce no evidence that Taboas was lying about why he hired Pavia, nor any evidence showing that Taboas did not believe that she was the most qualified candidate for the position. Rather, Plaintiffs rely on their own assessments of

13

their qualifications for the position. Such self-assessments are insufficient to support a pretext claim. Dunn v. Nordstrom, Inc., 260 F.3d 778, 787 (7th Cir. 2001). The Plaintiffs also rely once again on inferences and suppositions based on the variations from the normal hiring practices in hiring Pavia and what they allege is Taboas's record of hiring mainly minorities and women. Taboas on the other hand has offered unrefuted testimony that he believed Pavia to be the best qualified for the position. Specifically, Taboas was impressed by Pavia's experience with the disposal of radioactive and hazardous wastes and her experience with relevant safety and regulatory issues. This testimony is bolstered by Baker's assessment that Pavia was highly qualified for the position. Since the record is devoid of evidence that Taboas's reasons for hiring Pavia were lies, Plaintiffs have failed to show pretext and cannot support a discrimination claim using the burden-shifting method.

III. Retaliation Claims

Plaintiffs allege that they were retaliated against for filing a variety of EEO Complaints against Taboas. Title VII prohibits, inter alia, an employer from discriminating "against any of [its] employees . . . because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 200e-3(a). In order to establish a prima facie case of

retaliation, Plaintiffs must establish that they engaged in a protected expression and <u>as a result</u> they suffered an adverse employment action by their employer. <u>Stone v. City of Indianapolis Public Util. Div.</u>, 281 F.3d 640, 642 (7th Cir. 2002). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." <u>Rabinovitz v. Pena</u>, 89 F.3d 482, 488 (7th Cir. 1996)(citation omitted). Abraham does not dispute that Plaintiffs engaged in protected expressions, but he contends that they fail to establish that they suffered adverse employment actions or that the alleged adverse employment actions were the result of the protected expression.

The Court agrees that Plaintiffs did not suffer adverse employment actions and that they have failed to produce evidence beyond their own conjectures that they were retaliated against in response to their filing of several EEO claims against Taboas. Turning fist to Plaintiffs' joint claims, the first adverse employment action they all make is Taboas's receipt of the Gallegos letter that they claim put the authors at risk of harm.

15

However, no harm ever, in fact, came from his receipt of the letter. Some of the Plaintiffs highlight a civil lawsuit filed by Taboas against the Plaintiffs the year after receipt of the Gallegos letter. However, the lawsuit was neither an act of violence nor an adverse employment action. Kasprowicz also recalls an incident after the letter incident during which Taboas stared at Kasprowicz and Mlynczak. This incident not only occurred two years after the letter incident, but it also does not come anywhere near rising to the level of an adverse employment action. Plaintiffs point to no materially significant change in their employment situations that flowed from this letter.

Next, Plaintiffs argue that the circulation of the petition supporting Taboas interfered with the mediation process. However, it was the Plaintiffs themselves who put an end to the mediation process. They can provide no evidence that the petition in any way affected DOE's commitment to the mediation. Some Plaintiffs also argue that the circulation of the petition damaged their reputations. There is no evidence to support this supposition. On the contrary, the testimony of those who sign the petition indicates that despite the petition, they had no ill feelings against the Plaintiffs and in some instances considered them friends. Finally, some Plaintiffs complain of strained relationships with or shunning by co-workers. Although, the

16

evidence indicates that co-workers continued to interact, at least on some level with the Plaintiffs, such allegations are insufficient to constitute an adverse employment action in any event. Thus, Plaintiffs have failed to offer proof of any other material effect that the petition had on their employment status.

Turning to the Plaintiffs' individual retaliation claims, Balamut does indicate one failure to promote him in favor of promoting Purucker that satisfies the requirement of an adverse employment action. However, Balamut's only evidence that this failure to promote was the result of his EEO complaint (filed a month prior) is the closeness in time of the two events. Temporal proximity alone is simply not sufficient to sustain a retaliation claim. Sitar v. Ind. Dep't of Trans., 344 F.3d 720, 728 (7th Cir. 2003).

Balamut and Paliulionis also claim that some negative performance appraisals were made in retaliation for their filing EEOC claims. These performance appraisals did not lead to a demotion, a reduction in compensation or duties. Nor, are Balamut and Paliulionis able to provide evidence that they ever failed to get promoted as a result of these appraisals. The only consequence of these appraisals was that they might have cost them an annual bonus. Failure to receive a discretionary bonus does not turn an otherwise inactionable negative performance

evaluation into an adverse employment action. Rabinovitz, 89 F.3d at 488-89.

Thompson alleges that her removal from lead secretary and her subsequent transfer were retaliatory. First, her removal from the lead secretary position pre-dated her EEO claim and therefore, cannot constitute retaliation. As to her transfer, the new job was at the same GS level as her previous job. Such lateral transfers are not considered adverse job actions. Stutler v. Ill. Dep't of Corrections, 263 F.3d 698, 702 (7th Cir. 2001).

Kasprowicz argues that he suffered an adverse employment action in that the Chicago Office's EEO Officer, Sara Brunson, did not process his EEO claims appropriately. He claims that she missed deadlines. Further, he claims that responses to letters he sent to then acting-head of EEO, Willie Garrett, were unsatisfactory. However, "failure-to-process" claims regarding EEO complaints are not adverse employment actions. Jordan v. Summers, 205 F.3d 337, 342 (7th Cir. 2000). Further, he argues that disparaging comments made by his supervisor and that a project had been transferred. This too does not rise to the level of adverse employment action.

Without evidence to support the facts that Plaintiffs suffered adverse employment actions that were the result of their

protected expression, these claims cannot survive summary judgment.

## CONCLUSION

For the foregoing reasons, Abraham's motions for summary judgment as to the claims of Balamut, Paliulionis, Kasprowicz, Thompson, Henke and Kelly are granted.

ENTER:

GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: Oct. 20, 2004