# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4174 - 97C4313 | **DATE** | 12/28/2004 |
| **CASE TITLE** | Balamut, et al. Vs. Abraham | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Abraham's motion for summary judgment as to the claims of Mlynczak is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 29 2004 | |
| | Notified counsel by telephone. | | date docketed | 39 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS J. BALAMUT, JURGIS )
PALIULIONIS, JOHN D. KASPROWICZ, )
BARBARA J. THOMPSON, CAROLYN R. )
HENKE, JUDITH KELLY, and BERNARD )
J. MLYNCZAK, )
)
                Plaintiffs, )
) Nos. 97 C 4174
      v. ) &    97 C 4313
) Consolidated
SPENCER ABRAHAM, Secretary, )
United States Department of Energy, ) Judge George M. Marovich
)
                Defendant. )

DOCKETED DEC 2 9 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas J. Balamut, Jurgis Paliulionis, John D. Kasprowicz, Barbara J. Thompson, Carolyn R. Henke, Judith Kelly, and Bernard J. Mlynczak ("Mlynczak") (collectively "Plaintiffs") filed this action[1] against Defendant Spencer Abraham[2], ("Abraham") Secretary, United States Department of Energy ("DOE"). Mlynczak's Complaint alleged inter alia, that Abraham discriminated against him because of his sex, race, and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991 and that Abraham retaliated against him in violation of Title VII. Abraham now moves

---

[1] Initially, there were two separate actions that have since been consolidated. The consolidated actions are now referred to collectively. Abraham also filed summary judgment motions regarding the claims of the plaintiffs other than Mlynczak which were granted by this Court by separate order.

[2] This action was originally filed against then Secretary of the Department of Energy, Fredrico F. Pena. Spencer Abraham, the current Secretary of the Department of Energy, has been automatically substituted as the defendant in this matter. Fed. R. Civ. P. 25(d).

for summary judgment.[3] For the reasons set forth below, Abraham's motion for summary judgment as to the claims brought by Mlynczak is granted.

## BACKGROUND

Unless already noted, the following facts are undisputed. Mlynczak, a Caucasian man, is a physical scientist at the Department of Energy ("DOE") Chicago Office (the "Chicago Office"). In November of 1994, there was an opening for a GS-14 environmental scientist/researcher position. No internal announcement for the position ever appeared on the internal job posting bulletin board. Mlynczak contends that Elizabeth Lyon ("Lyon"), the Caucasian personnel specialist, failed to post the position. Such postings were customary at the Chicago Office, but not required.

The position was advertised publicly. The public position announcement provided candidates a nine-day window in which to apply. Six candidates from outside the company applied for the position. Eve Pavia ("Pavia"), a Hispanic woman, was hired. A large part of the environmental scientist/engineer duties involve waste management. Pavia had a Bachelor of Science degree in health physics and had experience with nuclear and hazardous waste management. Mlynczak lacked such experience in nuclear and hazardous waste management. Mlynczak contends that Pavia was pre-selected for the position by Anibal Taboas ("Taboas").

In the mid-1990s, Taboas told Mlynczak that he would be placed on the short list of candidates for the GS-14 safety programs branch manager position. However, Taboas never interviewed Mlynczak, or anyone else, for that position. Instead, based on her

---

[3] Abraham filed a motion to strike some affidavits provided by Mlynczak. Because the Court finds that Abraham is entitled to summary judgment as to Mlynczak's c laims, Abraham's motion to strike is denied as moot.

2

superior qualifications, Taboas promoted Roxanne Purucker ("Purucker") to the position. Taboas based this decision on her background in industrial safety and hygiene, experience in hazardous waste management, and certification as an industrial hygienist--none of which Mlynczak had.

Subsequently there was an opening for a GS-14 APS facility representative position. Robert Wunderlich did not post a position announcement because he felt he did not have the time which would be required by the process of announcing the position and giving people time to apply. Instead, Wunderlich hired Susan Heston, a Caucasian woman. Wunderlich based this selection on his positive work experience with her and because she was a GS-14 employee and he was only able to hire laterally. Wunderlich believes both Heston and Mlynczak were qualified for the position in different ways. When Mlynczak complained to Wunderlich about his hiring of Heston, Wunderlich told Mlynczak that he, like others before him, "had been screwed." Def's Mem. In Support of Summary Judgment at 4. In 1995, Mlynczak filed EEO complaints against Taboas and Wunderlich for Heston's appointment.

Following these complaints, Mlynczak and James Hooper, Mlynczak's then supervisor, talked about possibly upgrading Mlynczak's position to a GS-14 level. Hooper informed Mlynczak that DOE might require that the position be posted. Hooper instructed Mlynczak to draft a position description. Feeling that Hooper was not dealing honestly with him, Mlynczak refused to draft the job description and as a result his position was not upgraded.

In August of 1995, Plaintiffs sent a letter to Richard Gallegos ("Gallegos"), Director of the Office of Civil Rights and Equal Employment Opportunity, informing

him of their fear of violent retaliation from Taboas for their filing of EEO claims ("Gallegos letter"). Gallegos sent the letter to Cherri Langenfeld ("Langenfeld"), a manager. She forwarded it to Taboas. She now explains that she did so to ensure that Taboas was careful in his dealings with the authors of the letter. Plaintiffs filed an EEO retaliation claim for Langenfeld's handling of the Gallegos letter. A mediation was then conducted between Franklin Peters ("Peters"), the DOE representative, and the Plaintiffs to resolve the complaints regarding the Gallegos letter. Mlynczak chose not to participate in the mediation.

In December of 1995, a petition supporting Taboas was circulated around the Chicago Office. The petition may have been accompanied by the Gallegos letter and a letter Langenfeld wrote to FBI Director Louis Freeh regarding Taboas's security clearance. The petition criticized the Plaintiffs and their claims against Taboas. Mlynczak considered the petition a character assassination of himself and the other Plaintiffs. The signers of the petition claim that they did not see it as an attack on the Plaintiffs, but rather a show of support for Taboas. Mlynczak also claims that gradually his colleagues began to ostracize him. The petition was eventually presented to Peters.

In 1996, DOE dissolved the APS Group. That dissolution ended Mlynczak's supervision of the APS project. At that time, he was transferred to the TAS and Heston was transferred back to the EPG where she previously worked.

DISCUSSION

I. Standards for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only genuine disputes over "material facts" can prevent a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To overcome a defendant's motion, the plaintiff cannot rest on the pleadings but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue of fact. See Fed. R. Civ. P. 56(e). While the record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion," Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995), the non-movant must show more than "some metaphysical doubt" regarding the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

II. Discrimination Claim

Mlynczak asserts that Abraham discriminated against him due to his sex[4] in violation of Title VII by hiring Pavia and promoting Purucker and Heston over him. Under Title VII, it is unlawful for an employer to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, condition, or privilege4s of employment. See 42 U.S.C. § 2000e2(a)(1). There are two methods of proof for demonstrating alleged discrimination: (1) direct proof of discriminatory intent; or (2) indirect proof, or the burden-shifting method described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Oates v. Discovery Zone, 116 F.3d 1161,

---

[4] Mlynczak also contends that Abraham discriminated against him due to his race and color, since Pavia, Purucker, Heston and Mlynczak are all Caucasian, the Court can find no basis for this allegation

5

1169-70 (7th Cir 1997). Here, Mlynczak attempt to state claims for discrimination under the direct method, and as to the claim involving Heston, by the indirect method as well.

A. Direct Proof

The Seventh Circuit described direct evidence as "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Direct evidence "in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion." Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997). Establishing direct evidence of discriminatory intent "essentially requires an admission by the decision maker that his actions were based on a prohibited animus." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Furthermore, the evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." Randle v. LaSalle Telecomms., Inc., 876 F.2d 563, 569 (7th Cir. 1989)

Mlynczak describes two forms of direct evidence to support his claim that the hiring and promotion of the women was discriminatory on the basis of sex. He argues that the DOE's affirmative action and diversity policy, in conjunction with Langenfeld's admissions regarding her hiring opinions constitutes direct evidence to sustain his sex discrimination claim.

The Court finds this evidence insufficient to defeat summary judgment. The DOE's affirmative action and diversity plan does not provide direct evidence of discrimination in the case of Pavia's hiring, or Purucker and Heston's promotions. Moreover, Mlynczak

6

provides no authority to support his contention. Any light this evidence sheds on the hiring and promotions would have to be gleaned through inference or presumption. Any such inference or presumption would be impermissible in employing direct evidence to prove discrimination. Even if they were permissible, these inferences and presumptions would only support a general discriminatory intent and could in no way be directly linked to the specific decisions in question. See Id.

Mlynczak also points to what he characterizes as admissions on the part of Lagerfeld. Mlynczak asserts that Lagerfeld made a number of statements in which she expressed that: (1) given two equally qualified candidates, she would consider affirmative action in her decision and always choose the minority; and (2) she believed it was good for white males to experience situations they considered discriminatory to heighten their sensitivity toward the plight of women and minorities. Some of these comments, Mlynczak states, were made directly after she was informed that Mlynczak would be initiating a discrimination complaint. However, Langenfeld was not a decision maker involved in the hiring or promotion decisions. To constitute direct evidence of discrimination, the admissions must come from the decision maker. Radue, 219 F.3d at 616. Not only was Langenfeld not a decision maker in the employment actions at issue, her comments were not contemporaneous with or tied in any way to the hiring of Pavia or the promotion of Purucker or Heston. See Geier v. Madtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996) ("isolated comments must be contemporaneous with the [employment decision] or causally related to the . . . decision making process").

Thus, there is not enough direct evidence of discrimination to support Mlynczak's sex, race or color discrimination claims.

7

B.  <u>Burden-Shifting Analysis</u>

Having failed to find direct evidence to support Mlynczak's discrimination claims, the Court turns to his arguments regarding indirect evidence. The mechanics of proving discrimination pursuant to this indirect burden-shifting analysis are well-settled:

> If the plaintiff establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer a legitimate, nondiscriminatory or non-retaliatory reason for the adverse employment action. If the employer gives a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove this reason a mere pretext for discrimination.

Payne v. Milwaukee County, 146 F.3d 430, 433 (7th Cir. 1998). To state a prima facie case, Mlynczak must prove that: (1) they were members of a protected class; (2) they were performing according to their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) another similarly situated employee who was not in their protected class was treated more favorably. See e.g. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343 (7th Cir. 1997).

Nevertheless, this Court need not resolve whether Mlynczak has properly made out a prima facie case of discrimination where it can decide the case on other issues. Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 399 (7th Cir. 1997); EEOC v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 149 (7th Cir. 1996) ("[T]his court may advance to an ultimate issue in a summary judgment analysis and consider the

discrimination question notwithstanding a dispute over a fact necessary for a prima facie case"). When evaluating an employer's proffered reasons for pretext, a court need only determine whether the defendant actually believed its reasons, even if the reasons are baseless or trivial. Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997). Plaintiffs cannot establish pretext merely by proving that an employer's skill assessment is flawed. Olsen v. Marshall & Isley Corp., 267 F.3d 597, 602 (7th Cir. 2001). Rather, plaintiffs must prove that the employer's explanation is a lie. Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001).

Mlynczak produces no evidence that the DOE managers and supervisors were lying about why it hired Heston, Pavia, or Prurucker, nor any evidence showing that they did not believe that the chosen candidates were the most qualified for the position. Rather, Mlynczak relies on his own assessment of his qualifications for the position. Such self-assessments are insufficient to support a pretext claim. Dunn v. Nordstrom, Inc., 260 F.3d 778, 787 (7th Cir. 2001). Mlynczak also relies once again on inferences and suppositions based on variations form the normal hiring practices in hiring Pavia and Prurucker. Abraham, on the other hand, has offered unrefuted testimony that Taboas believed Pavia and Prurucker to the best qualified for their respective positions. There was also unrefuted evidence in the record supporting Abraham's claim that Wunderlich hired Heston because he was only able to hire a lateral and that he had worked with Heston in the past and been impressed with her abilities. Since the record is devoid of evidence that Taboas's reasons for hiring Pavia and Prurucker and Wunderlich's reasons for hiring Heston were lies, Mlynczak has failed to show pretext and cannot support a discrimination claim.

III. Retaliation Claim

Mlynczak alleges that he was retaliated against for filing a variety of EEO complaints against Taboas and Wunderlich. Title VII prohibits, inter alia, an employer from discriminating "against any of [its] employees . . . because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, Mlynczak must establish that he engaged in a protected expression and as a result he suffered an adverse employment action by their employer. Stone v. City of Indianapolis Public Util. Div., 281 F.3d 640, 642 (7th Cir. 2002). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996) (citation omitted). Abraham does not dispute that Mlynczak engaged in protected expressions, but he does contend that Mlynczak fails to establish that he suffered adverse employment actions or that the alleged adverse employment actions were the result of the protected expression.

The Court agrees that Mlynczak did not suffer adverse employment actions and that he failed to produce evidence beyond his own conjectures that he was retaliated against in response to his filing of several EEO claims against Taboas and Wunderlich. Fist, Mlynczak contends that the circulation of the petition: 1) interfered with the fair and impartial resolution of his discrimination claims; 2) caused his colleagues to shun him;

10

and 3) caused management to ostracize him and refer to him in derogatory ways. However, Mlynczak provides no evidence that the petition in any way affected the DOE's handling of his discrimination claims. Furthermore, the evidence indicates that contrary to Mlynczak's allegations, co-workers continued to interact, at least on some level with Mlynczak. Finally, any alleged ostracism or derogatory references to him by unnamed DOE management, is not actionable because such activity does not rise to the level of adverse employment actions. Bell v. Environmental Protection Agency, 232 F.3d 546, 555 (7th Cir. 2000). Thus, Mlynczak has failed to offer proof of any material effect that the petition had on their employment status.

Mlynczak also argues that Taboas's statement to another employee that he "would never promote" Mlynczak was made in retaliation for his filing EEOC claims. Mlynczak fails to show any evidence which either relates that comment: 1) to a specific employment decision, see Fyfe v. City of Fort Wayne, 241 F.3d 597, 601-02 (7th Cir. 2001); or 2) to his EEO activity, see Hill v. American Gen. Fin., Inc., 218 F.3d 639, 641 (7th Cir. 2000). As such, this comment is not actionable reprisal.

Mlynczak also attempts to base his retaliation claim on some negative performance appraisals. These performance appraisals did not lead to a demotion or a reduction of compensation or duties. Nor, is Mlynczak able to provide evidence that he ever failed to receive a promotion as a result of these appraisals. Mlynczak next claims that his transfer from the APS project was retaliatory. This is completely without merit as the entire APS was disbanded and everyone but the manager was given transfers. Finally, the civil lawsuit filed by Taboas against Plaintiffs does not constitute an adverse employment

action to support a retaliation claim, nor does the allegations of staring or standing to close.

Without evidence to support the claim that Mlynczak suffered an adverse employment action that was the result of his protected expression, his claim cannot survive summary judgment.

## CONCLUSION

For the foregoing reasons, Abraham's motion for summary judgment as to the claims of Mlynczak is granted.

ENTER:

GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: Dec. 28, 2004